[No. 2179. Decided April 2, 1896.]

THE STATE OF WASHINGTON, *on the Relation of What-com County, Appellant,* v. E. W. PURDY, *Treasurer of Whatcom County, Respondent.*

SPECIAL ACT — REPEAL BY GENERAL LAW — PUBLICATION OF DELIN-QUENT TAX LISTS — POWER OF TREASURER TO SELECT NEWSPAPER.

A special law may be repealed by implication by the provisions of a general act, if by the terms of the general law it becomes evident that the intention of the legislature was to repeal the special law.

Sec. 96, Laws 1893, p. 366, specially confers authority upon the county treasurer to select the newspaper in which to publish the delinquent tax list of the county, and such section necessarily, to that extent, repeals the provisions of Gen. Stat., § 2936, authorizing the county commissioners to contract for the official publication of all notices.

Appeal from Superior Court, Whatcom County.— Hon. JOHN R. WINN, Judge.    Affirmed.

*G. V. Alexander,* for appellant.

*H. A. Fairchild,* and *Black & Leaming,* for respondent.

The opinion of the court was delivered by

DUNBAR, J.—This was a proceeding in mandamus to compel the respondent, as treasurer of Whatcom county, to furnish the delinquent tax list of said county, required by law to be published in the month of April, 1896, to the official paper of said county.

The commissioners of Whatcom county had designated "The Champion" as the official paper of said county, and had entered into a contract with said paper to do the printing for the county. The treasurer answered the alternative writ, denying that the county commissioners had authority to enter into the

contract with "The Champion" for the publication of the delinquent tax list, and asserting that he, as such treasurer, had full power and authority under the law to cause said list to be published in any paper published in said county which he might select, and that he had entered into a contract with the "Reveille" in February, 1896, for the publication of said delinquent tax lists. The answer also set up a contract entered into by the board of county commissioners with the "Reveille," in June, 1894, which said contract provided for the doing of the county printing by the said "Reveille," including the delinquent tax lists. Upon the hearing the writ was denied.

With our view of the law governing the other phase of the question presented, it will not be necessary to enter into a discussion of the force of the contract entered into between the commissioners and the "Reveille. Sec. 2936 of the General Statutes provides that it shall be the duty of the county commissioners to let the advertising and official publication of all notices to the publisher of a newspaper, where two or more weekly newspapers are published in the county, who is the best and lowest responsible bidder, etc. It is conceded that, under the provisions of this section and of the subsequent §§ 2937 and 2938, the paper designated by the county commissioners would be the paper which should publish the delinquent tax lists. But respondent relies upon § 96 of the revenue law of 1893 (p. 366), which provides for the selection of a paper by the treasurer, for the doing of this work. The contention of the appellant is that § 2936 of the code, being an enactment by the legislature in 1885–6, was a special law, and that its provisions are not repealed by the provisions of the general law of 1893, and that there is no direct repeal of the law providing

for the selection of the paper to do the printing by the
county commissioners, and no direct authorization to
the treasurer to enter into a contract for the printing
of the delinquent tax list, in the act of 1893; and that
therefore, if the law of 1886, which is § 2936 of the
General Statutes, is repealed it must be repealed by
implication, and the old familiar doctrine that the re-
peal of statutes by implication is not favored, is urged
at great length.

In the first place, it does not appear to us that
§ 2936 of the General Statutes is a special provision of
the law.   This section, together with § 2937, was
offered as an amendment to the Code of 1881, and, as
such amendment was passed by the legislature of
1885–6.   About the only difference between the law as
it stood before and after the amendment of 1885–6 is
as to the time when a paper could bid for the county
printing, the old law providing that where two or
more newspapers are published it shall be the duty of
the county commissioners to let the public printing
to the lowest bidder, and the law of 1885–6 providing
that no newspaper shall be eligible as a competitor
unless the same shall have been published for at least
six months prior to the letting of the contract; also pro-
viding that where no paper was published in the county
the commissioners should cause the printing of the
county to be done in some newspaper in the state of gen-
eral circulation in the county having no resident news-
paper.   These are about the only new provisions
which were engrafted on the general law by the act of
February 3, 1886.   The act of 1893 (Laws 1893, p.
323), seems to be an act governing every step in the
assessment and collection of taxes, which must neces-
sarily include the printing of the delinquent tax lists.
The title of the act is, "An Act to provide for the

assessment and collection of taxes in the State of Washington, and declaring an emergency;" and the repealing clause is that, "all acts and parts of acts heretofore enacted by the legislature of the territory or state of Washington providing for the assessment and collection of taxes in this state shall be and the same are hereby repealed," (Laws 1893, p. 385, § 137) being stronger than the ordinary repealing clause, providing that "all acts and parts of acts in conflict with the provisions of this act are hereby repealed."

But, even if the act of February 3, 1886, (Laws 1885-6, p. 108,) were a special law, it does not necessarily follow that it could not be repealed by the provisions of the general act; for the rule is that, if by the terms of the general law it becomes evident that the intention of the legislature was to repeal the special law, it is the duty of the courts to hold the special law repealed. It was said by this court, in *Northern Pacific R. R. Co. v. Haas*, 2 Wash. 379 (26 Pac. 869), that,

"As a rule, it will not be held that a special act is repealed by implication by a general one upon the same subject. The intention of the legislature, however, in enacting the several laws, is what is to be arrived at; and, if it sufficiently appears that it was intended that a subsequent general law should supersede all prior legislation upon the same subject, general or special, though not expressly so stated, effect should be given to such purpose."

Then construing the act of 1893 as a complete law for the collection of revenues, does it confer authority upon the treasurer to select the paper to print the delinquent tax lists? Sec. 96 of the act of 1893 provides that,

"The county treasurer shall, during the month of April in the second year following the date of delin-

quency of any taxes on real property, publish an advertisement giving notice of the intended application for judgment for sale of such delinquent lands and lots, in a newspaper published in his county, if any such there be, or if there be no such paper printed in his county, then he shall post three notices of such intended application in the most conspicuous places in such county, one of which shall be at the door of the court house at the county seat of such county."

Said section proceeds to point out specifically the manner and form of this publication, and provides at the close of the section that,

" Where the publisher of any paper that may have been selected by the county treasurer shall be unable or unwilling to publish such advertisement, said treasurer shall select some other newspaper, having due regard to the circulation of such paper, or shall post the notices hereinbefore prescribed."

Fully indorsing the proposition urged by the appellant, that the authority of a public officer in any given case consists of those powers which are expressly conferred upon him by the act appointing, or which are expressly annexed to the office by the law creating it, or some other law referring to it, or which are attached to the office by common law as incident thereto, it seems to us that the law in this case specially provides for the selection of the newspaper to publish the delinquent tax lists by the treasurer. The appellant insists that the meaning of the statute is that where the publisher of a paper selected by the commissioners refuses, or shall be unwilling to publish such advertisement, then and then only the treasurer shall select some other newspaper. But we do not think this is a reasonable construction of the statute. In the first place, there would be no more reason why the commissioners should not select a second paper in the

event of the refusal of the first one selected to do the
work, than there would why they should select the
publisher in the first instance.   In the second place,
such a construction does not reflect the language of
the statute, or its reasonable meaning.   The language
is not, "where the publisher of any paper that may
have been selected by the commissioners shall be un-
able or unwilling," etc., but it is, "where the pub-
lisher of any paper that may have been selected by
the *county treasurer* shall be unable or unwilling," etc.,
then the treasurer shall select some other newspaper,
and the word "select" is of too well defined a mean-
ing to bear discussion.   If it was not the intention of
the legislature to invest discretion and choice in the
treasurer in this particular, then it was most unhappy
indeed in its selection or choice of words.

We are cited by the appellant to the opinion of the
attorney general, found on page 78 of the opinions of
1893-4, wherein he advised the prosecuting attorney
of Snohomish county that the paper selected by the
county commissioners was the proper paper in which
to publish the delinquent tax lists.   But, while enter-
taining the highest regard for the legal knowledge of
the learned attorney general, we are unable to reach
the conclusion that he did on this subject.   He bases
his opinion somewhat on the theory that § 2938 seems
to imply that there may be counties in the state in
which the county commissioners have failed to desig-
nate any newspaper as the official newspaper of the
county, and is, he says, credibly informed that there
are several counties in the state in which that is the
case, and concludes that the provisions of § 96 of the
act of 1893 are intended to authorize the selection of
the paper by the treasurer only in such cases.   What
the particular fact may be in regard to this condition

of things we are not advised, but we see nothing in
.§ 2938 to indicate that the legislature intended to make
any distinctions of this kind.

We are of the opinion that the law fully empowers
the treasurer to make the selection, in any and all
counties, of a paper to publish the delinquent tax lists.

The judgment of the lower court will therefore be
affirmed.

HOYT, C. J., and SCOTT, ANDERS and GORDON, JJ.,
concur.